IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOHNNY C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 2:23-cv-00381-HL <br><br> **OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

Plaintiff Johnny C. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming,

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

**I.      Plaintiff's Application**

Plaintiff alleges disability based on chronic migraines, depression, anxiety, PTSD, two bulging discs in his neck, and a bad left knee. Tr. 87-88.[2] At the time of his alleged onset date, he was 44 years old. Tr. 87. He has completed high school and has no past relevant work. Tr. 28.

Plaintiff protectively applied for SSI on July 25, 2019, alleging an onset date of July 1, 2017. Tr. 87-88. His application was denied initially on October 30, 2020, and on

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

reconsideration on April 26, 2021. Tr. 13, 99-100, 109-10. Plaintiff subsequently requested a hearing, which was held on December 29, 2021, before Administrative Law Judge ("ALJ") Caroline Siderius. Tr.29. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 29-52. A vocational expert ("VE"), Daniel McKinney, also testified. Tr. 48-51. On January 12, 2022, the ALJ issued a decision denying plaintiff's claim. Tr. 24. Plaintiff requested the Appeals Council review ALJ Siderius's decision, which was denied on January 10, 2023. Tr. 1-6. Plaintiff then sought review before this Court.

**II.      Sequential Disability Process**

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his application date. Tr. 15.

At step two, the ALJ determined that plaintiff has the following severe impairments: "migraine headaches, anxiety, posttraumatic stress disorder, and depression." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. The ALJ then resolved that plaintiff had the RFC to perform medium work with the following limitations: light work with the following limitations:

> [He can work] with only ordinary office level lightning and noise levels. [He should] avoid concentrated exposure to odors, dust, gases, and fumes. [He is limited to] simple, routine and repetitive tasks with no detailed work. [He can have] superficial and brief contact with the general public. [He can have] occasional non-

collaborative contact with coworkers. [He is capable of] only ordinary production requirements with no strict production quotas. [He] would work best independently.

Tr. 18.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 23. At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as an odd job worker/caretaker, a day worker/housekeeping, and routing clerk. Tr. 23. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony as it pertains to his migraines; and (2) failing to incorporate a limitation to short instructions in plaintiff's RFC.

**I.      Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject his symptom testimony. Pl.'s Opening Br. 4-6. Specifically, plaintiff contends that the ALJ's summary of plaintiff's migraine testimony and medical records does not sufficiently fulfill the ALJ's duty to provide specific, clear and convincing reasons to reject his symptom testimony. *Id*. at 6. This Court agrees.

**A.      Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

**B.    Plaintiff's Testimony**

Plaintiff reported that he could not work on a regular, full-time basis because of chronic migraines, depression, anxiety, PTSD, two bulging discs in his neck, and a bad left knee. Tr. 213. Plaintiff submitted, but did not fill out, a function report. Tr. 257-64.

At the hearing, plaintiff testified that he lost his last job in 2017 as a fast-food worker at Burger King due to his migraines. Tr. 35. He explained that he has been having severe migraines

since he was seven years old as a result of a car accident. *Id*. He further explained that he can sometimes feel his migraines coming. *Id*. For his migraines, plaintiff testified that he takes Imitrex and propranolol. Tr. 37. He stated that propranolol was to be taken two times a day for headache prevention. *Id*. When asked if he takes his medications normally, plaintiff testified that he takes them only when he feels a migraine coming. *Id*. When asked if his migraine medication is effective, plaintiff testified that it is but can be "kind of a touch and go." Tr. 37-38. He explained an instance where he felt a migraine coming, took his medication, and it eased it to "where I didn't get sick." *Id*. Plaintiff stated that he still experiences migraines despite taking medication, that he gets one a month, but that he can also get multiple in a single month. Tr. 38. He stated that besides taking medication, he will shower, lie down and stretch out, and constantly rub at the back of his neck in order to help decrease the migraine's effects. *Id*. When his migraines are particularly bad, he will vomit, must have total darkness and quiet, and that he cannot engage in any sort of movement. Tr. 38-39. When asked if he has tried anything other than medication, he stated that acupuncture provided relief. Tr. 39. When asked if his migraines varied in intensity, plaintiff stated that if he catches them in time, he is "lucky enough where I'm not throwing up," but that he still experiences a "sharp, dull pain." *Id*. When he experiences a migraine, plaintiff explained that he cannot bend over or squat because it makes him dizzy, that he could move as long as it was "slow and easy," but that he could not do anything "fast-paced." Tr. 40.

      The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. The

ALJ reasoned that plaintiff's testimony of his disabling limitations was inconsistent with the medical evidence. Tr. 19, 22-23. Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to discount his migraine testimony.

### C.     Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony regarding his migraines was inconsistent with his medical records. Tr. 19, 22-23. Unfortunately, the ALJ does not point to any specific records or testimony showing that plaintiff's migraine testimony was inconsistent. In the rare instance that the ALJ does mention plaintiff's migraines, it is done as a summary. *See* Tr. 19 ("he has had [migraines] since he was . . . 7 years old, ad that he also has tried acupuncture"); Tr. 20 (plaintiff complained of zero-to-four migraines a month at a consultative examination in February 2020); Tr. 21 (during a psychiatric evaluation in October 2020, plaintiff reported experiencing migraines during the day and occasionally at night, that he becomes nauseous and has to be in the dark, and that he has periods where he experiences no migraines

for three to four months while at other times he can have several a week). "Providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) (quoting (*Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (emphasis in original). Clearly, this "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (internal quotation marks omitted).

The Commissioner argues that plaintiff's migraines were taken into account because: (1) the RFC restricts him to ordinary office lighting and noise levels, and states he should avoid exposure to odors, dust, gases, and fumes; (2) plaintiff only points to his symptom testimony and that symptoms alone are insufficient to establish disability; and (3) plaintiff's records reflect that his migraines were both adequately treated with medication and that he did not seek treatment during the relevant time period. Def.'s Br. 5-7. While the Commissioner now provides important arguments on review, those arguments were not relied upon by the ALJ, making this a post-hoc rationalization this Court cannot consider. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Furthermore, even if the ALJ had adequately discounted plaintiff's testimony based on inconsistencies with the medical evidence, that could not serve as the sole basis for doing so. *See Robbins*, 466 F.3d at 883.

Last, the Commissioner argues that any error in assessing plaintiff's migraines was harmless error because plaintiff could not show that he was harmed. Def.'s Br. 7. However, this argument is unavailing. Plaintiff testified that he experiences one to three migraines a month, and

that when he experiences a migraine, he cannot move, needs total darkness and quiet, may vomit, must move very slowly or not at all, and may also need to lie down. Any combination of these affects could render him disabled, and therefore the error was not harmless. *See Colvin*, 806 F.3d at 494 (holding that an error is harmless only when it is "inconsequential to the ultimate nondisability determination").

In sum, the ALJ failed to provide specific, clear and convincing reasons to discount Plaintiff's migraine testimony.

## II.     Plaintiff's RFC

Plaintiff argues that the ALJ erred by failing to include a limitation to short instructions in his RFC. According to plaintiff, a limitation to short instructions would have rendered him incapable of performing the jobs the VE identified because they have a reasoning level of 2. Pl.'s Opening Br. 7-11.

### A.     Legal Standards

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [his]

identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1).

The ALJ relies on the testimony of a VE to identify specific occupations that a claimant can perform in light of her RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "if an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). If that situation arises, "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Even if the ALJ fails to include all of a claimant's limitations, such error could still be harmless if it is "inconsequential to the ultimate nondisability determination." *Colvin*, 806 F.3d at 494.

  **B.**  **Analysis**

Plaintiff argues that his RFC should have included a limitation to short, simple instructions, rather than just simple instructions, and that, by not including short, the ALJ made erroneous step five findings. This Court agrees.

Ben Kessler, Psy.D., provided a medical opinion in which he stated that plaintiff was "capable of understanding/remembering short/simple, but not detailed or complex instructions," and was capable of maintaining sustained concentration and persistence for "short/simple, but

not detailed or complex tasks." Tr. 97-98. The ALJ found Dr. Kessler's opinion persuasive, but did not incorporate a limitation to short, simple instructions, opting only for a limitation to "simple, routine, and repetitive tasks." Tr. 18, 22. The ALJ also failed to incorporate a limitation to short, simple instructions into the hypotheticals posed to the VE. Tr. 48-51. The ALJ provided no explanation for this omission. In omitting "short," the ALJ "invit[ed] the vocational expert to identify jobs that have longer-than-short, simple instructions." *Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023). Therefore, the ALJ erred in relying on the VE's testimony.

The Commissioner argues that a limitation to "short, simple instructions" rather than just "simple instructions" was inconsequential because the identified jobs are all unskilled with a reasoning level of 2, and unskilled work requires only simple instructions and tasks. Def.'s Br. 8-10. The Commissioner's argument, however, is unavailing.

As the Ninth Circuit discussed in *Leach*, level one jobs require "simple one-or-two step instructions," while level two jobs require "detailed but uninvolved . . . instructions," and that both reasoning levels "require simple (or "uninvolved") instructions. 70 F.4th at 1256. The key, however, is that "level-one jobs require instructions involving at most two steps, whereas level-two jobs may require detailed–that is, potentially longer–instructions." *Id* (internal quotations omitted); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) ("Only tasks with more than one or two steps would require 'detailed' instructions.") In other words, "a level-two job with 'detailed but uninvolved . . . instructions' could require an employee to follow *lengthy* simple instructions." *Leach*, 70 F.4th at 1257. While a limitation to "short, simple instructions" would not necessarily restrict a claimant to level one jobs because the possibility exists that some level two jobs could be consistent with following only short, simple instructions, the VE was not asked about such a limitation, leaving this Court with no

evidence on this point. *See id* ("Some level-two jobs . . . might be consistent with a limitation to following only short, simple instructions. For example, a particular level-two job might involve only three tasks that are simple to explain.")

Because the ALJ omitted "short" when proposing the hypothetical to the VE, the ALJ described a person with a greater functional capacity and erred when relying on the VE's testimony, constituting harmful error.

## III.   Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Here, plaintiff seeks a remand for further proceedings.  Pl.'s Opening Br. 11. This Court agrees. On remand, the ALJ must reassess plaintiff's subjective symptom testimony as it pertains to his migraines or provide specific, clear and convincing reasons why this testimony is rejected. The ALJ must also incorporate a limitation to "short, simple instructions," rather than only "simple instructions," into plaintiff's RFC or provide reasoning supported by substantial evidence for its rejection. Lastly, if necessary, the ALJ shall reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 13th day of June, 2024.

ANDREW HALLMAN
United States Magistrate Judge